IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>           Plaintiff, )<br>           )<br>v.           )<br>           )<br>APPROXIMATELY $7,133 IN FUNDS )<br>SEIZED FROM CLYDE ANDERSON, JR. )<br>           )<br>           Defendant. ) | **COMPLAINT FOR**<br>**FORFEITURE *IN REM***<br><br>Civil Action No.: 3:18cv294 |

Now comes the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## INTRODUCTION

1. This is a civil action *in rem* against approximately $7,133.00 in United States Currency seized from Clyde Anderson, Jr. pursuant to the provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981 for a violation of 18 U.S.C. § 1961(l), which constitutes a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A).

2. This action seeks the forfeiture of all right, title, and interest in the above-captioned property where "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) is [also] subject to forfeiture. 18 U.S.C. § 981(a)(1)(C).

3. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621 and, to the extent applicable, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

4. This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

5. The defendant property has been seized on land, is now within, and during the pendency of this action will remain within the Western District of North Carolina.

6. The Defendant is all present and future interest in the following property:

   a. approximately $7,133.00 seized from Clyde Anderson, Jr. at the Charlotte Douglas International Airport on January 24, 2018.

## FACTUAL BACKGROUND

7. On January 24, 2018, Homeland Security Investigations (HSI) Agents and the Charlotte Mecklenburg Police Department (CMPD) were conducting a pre—screening interdiction operation at the Charlotte Douglas International Airport.

8. The Agents and Officers were specifically investigating Concourse D Gate D11.

9. HSI Special Agent William Bass, CMPD Task Force Officer (TFO) Brown and Pineville Police Department (PPD) TFO Bradshaw with his canine, "Yona" Officer were conducting an "open air sniff" of all passengers' carry-on luggage as they waited in line to enter the Jetway of Gate D11.

10. During the open-air sniff, Yona showed an alert to TFO Bradhsaw and indicated the presence of narcotics in the carry-on bag of Clyde Anderson Jr. located on the ground in front of him as he waited to board American Airlines flight. #692 departing Charlotte, NC to Phoenix, AZ.

11. Agent Bass and TFO Brown approached Anderson, identified themselves as law enforcement officers, and asked if they could speak with him.

12. Anderson agreed to speak with Agent Bass and TFO Brown and he exited the line away from other passengers.

13. Agent Bass informed Anderson that a canine alert to the Presence of narcotics in his carry-on bag.

2

Case 3:18-cv-00294-RJC-DSC   Document 1   Filed 06/06/18   Page 2 of 9

14. Agent Bass asked Anderson for permission to search the carry-on bag that Yona alerted on and he agreed.

15. TFO Brown began searching Anderson's bag and began questioning him about his travel.

16. Agent Bass asked for Anderson's identification and he presented a Virginia Driver's License bearing number ███████.

17. The Virginia Driver's License contained the address of PO Box 4573 Charlottesville, VA 22905-4673.

18. When asked by Agent Bass if he was carrying weapons or currency over $10,000 in his carry-on bag, Anderson responded "No".

19. When asked by Agent Bass if he was carrying any weapons or currency in his carry-on bag, Anderson responded "Yes".

20. When asked by Agent Bass where the currency was located, Anderson responded that the currency was located "underneath some clothing".

21. When asked how much currency he was carrying, Anderson responded about "$5,000 to $6,000 dollars".

22. TFO Brown discovered several bundles of US currency concealed underneath some clothing Anderson's carry-on bag along with nine (9) food saver vacuum seal bags.

23. When asked by Agent Bass if Anderson was carrying any more currency, he pulled another small bundle of currency from his pocket and handed it to TFO Brown.

24. When asked by Agent Bass if he had any previous encounters with law enforcement Anderson responded that he had been in trouble when he was "younger" for drug possession and manufacture to sale.

3

25. When asked by Agent Bass if he was currently employed, Anderson responded that he worked for a trucking company in Charlottesville, VA but did not provide the name of his employer.

26. When asked by Agent Bass why he was traveling to Phoenix, Anderson responded that he was going to visit family.

27. When asked by Agent Bass how long he planned to stay in Phoenix, Anderson responded that he planned to stay "for a couple of days or so".

28. When asked by Agent Bass if he was transporting the currency for anyone, Anderson replied "no" and indicated that all of the currency belonged to him.

29. When asked by Agent Bass why he was carrying vacuum seal bags in his carry-on, Anderson responded that "was taking them to [his] cousin because he asked for them".

30. Upon hearing his response, Agent Bass further inquired as to why Anderson was transporting vacuum seal bags that could be purchased from anywhere and told Anderson that the Agent and Officers believed he was traveling to Phoenix to purchase marijuana and narcotics to ship back to himself in Charlottesville, VA.

31. Anderson did not respond to Agent Bass's statement.

32. Agent Bass then advised Anderson that he would be seizing the currency due to the positive drug canine alert, his criminal history, and his inability to provide any information as to where or how he obtained the currency in his possession.

33. Agent Bass then provided Anderson with a DHS/HSI Form 6051 property receipt for the currency.

34. Agent Bass also seized the food saver vacuum seal bags.

35. Agent Bass also informed Anderson that he was not under arrest, and could leave at any time.

4

36. Agent Bass then asked Anderson Jr. if he would be willing to come to the Airport Law Enforcement Office to discuss further the origin of the currency.

37. Anderson declined.

38. A review of Anderson's criminal history revealed

   a. a 2006 manufacture, sale, possession of controlled substance violation in Albemarle, VA resulting in conviction in August 2007;

   b. a 2008 violation for possession of a controlled substance in Albemarle, VA resulting in an April 2009 conviction;

   c. A 2012 violation for disregarding signal by law-enforcement officer to stop; eluding police in Fairfax, VA, resulting in conviction in September 2013;

   d. a Probation violation in September 2015; and

   e. a Marijuana possession violation in Jackson, Georgia in November 2014, which resulted in a deferred prosecution agreement in January 2015 and completed conditional discharge in June 2015.

39. Anderson's history also revealed other drug related arrests, which did not result in conviction.

40. In addition, during a highway stop on June 26, 2017 on I-85 in Archdale, N.C., for following too closely, Anderson was found to be transporting approximately $7,000 in cash in his rental car.

41. Although the currency was not seized, the Police Report for the 2017 Highway notes that narcotics canine alerted to the currency—several thousand dollars rolled in one-thousand dollar bundles, in a suitcase and another $4,000 in currency rubber-banded in a duffel bag.

42. At the time of the stop, Anderson had two cell phones in his possession and took one of the phones apart during the stop as the Officers approached the vehicle.

43. Further, Anderson who resides in Virginia, rented the vehicle in Georgia and the explanation he provided for his trip was that he was buying dogs.

44. Additionally during a traffic stop in 2012 in High Point, North Carolina, a Police Report revealed that approximately $28,000 was seized from Anderson.

45. Despite his insistence that he was employed in Virginia, a records check with the Virginia Fusion Center failed to disclose record of employment by Anderson in the state of Virginia.

46. A check of Anderson's travel history disclosed that his destination was not actually Phoenix, Arizona and that he was merely catching a connecting flight to Oakland, California later that day.

47. The travel history further disclosed that Anderson had bought a one-way ticket for this trip on January 18, 2018, using a credit card.

48. Additionally, the history disclosed that while in California, Anderson made two border crossings from Mexico, in the pedestrian lane at San Ysidro, on the mornings of January 26 and January 28, 2018.

49. Travel records showed that Anderson purchased a one-way return trip ticket on January 22, 2018 (using the same credit card as for his outbound trip), flying out of San Diego, California and returning to Charlottesville, Virginia.

50. Upon seizure, the currency was transported to Loomis where an official count was conducted.

51. The count revealed $7,133, composed of: 348 $20 bills, 13 $10 bills, 7 $5 bills, and 8 $1-bills.

## PRAYER FOR RELIEF

52. By virtue of the foregoing, all right, title, and interest in the defendant property vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. §881(h), and has become and is forfeitable to the United States of America.

53. Upon information and belief, the following persons may have or claim an interest in the defendant property:

> Clyde Anderson
> P.O. Box 4673
> Charlottesville, VA 22905
>
> Isaac Safier, Esq.
> Law Office of Rebecca Feigelson
> 345 Franklin Street
> San Francisco, CA 94102

WHEREFORE, the United States of America respectfully prays the Court that:

(1) a warrant for the arrest of the Defendant be issued;

(2) due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3) judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

(4) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of defendant property as required by 28 U.S.C. § 1921.

Respectfully submitted, this the 6th Day of June, 2018.

**R. ANDREW MURRAY
UNITED STATES ATTORNEY**

/s Tiffany Mallory Moore
Assistant United States Attorney
GASB #744522
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Email: tiffany.moore2@usdoj.gov

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

## VERIFICATION

William V. Bass deposes and says under penalty of perjury;

I am a Special Agent with the Department of Homeland Security and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_William V. Bass_
Special Agent William V. Bass

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

I certify that William V. Bass personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the 5 day of June, 2018.

_Lauren Amanda Fowler Hefferon_
Notary Public

My Commission Expires: 11/19/2018

Lauren Amanda Fowler Hefferon
NOTARY PUBLIC
Cabarrus County, North Carolina